# Keen *et al. versus* Kleckner and Orwig.

42 529
141 294
42 529
180  61

*Voluntary Judgment for Debt barred by the Statute, validity of as against other Creditors.—Debtor in failing circumstances, power of to prefer bonâ fide Creditors.— What claims may be included in such Judgment. —Estoppel in pais.* .

1 Though part of a debt for which a judgment is given is barred by the Statute of Limitations, yet if the claim be honest, the defendants are not bound to interpose the statute, and the judgment is valid : so if a part of the claim be founded on a moral obligation, such as the verbal assumption by one of the defendants of indebtedness which under the Statute of Frauds would not be enforceable at law, the judgment is nevertheless good ; and where execution is issued upon it, and the property of the defendants sold to the plaintiff therein, his title thereto will be good. ·

2. Though the defendants are in failing circumstances, yet they have the right to secure a *bonâ fide* debt by judgment, though other creditors may be defeated thereby ; and the questions as to the validity of. the debt are for the jury.

3. Where the father of the defendants had made an assignment for the benefit of creditors, while his sons were indebted to him, but his debts were all paid and the remaining property revested in him, it is not a fraud on the creditors of the defendants that the assignee did not return the indebtedness in the inventory ; and, in an issue for the purpose of trying the title to goods levied on by execution-creditors of the sons, but claimed by the father, he is not debarred from asserting such indebtedness. ·

ERROR to the Common Pleas of *Schuylkill county*.

This was an issue under the Sheriff's Interpleader Act, in which Michael Kleckner and Joseph Orwig were plaintiffs, and Keen, Sterling & Frank, Shultz, Peiffer & Sieger, and Brooke & Fuller were defendants, to try the right of property in a certain stock of store goods which had been taken in execution under judgments by the said defendants against Jeremiah and Charles Kleckner, partners doing business as J. & C. Kleckner.

The material facts of this complicated case are as follows:— Michael Kleckner, a merchant living in Union (now Snyder) county, took his son Jeremiah into partnership with him at his store in Centreville, some time in May 1852. The son agreed to pay the one-half of the indebtedness then due to merchant creditors and others, on account of goods sold to him for that store. The business was conducted there for some time by the father and son, when the father sold his interest in the stock of goods and partnership property to his son, who continued the business in his own name for about eleven months, and then took his brother Charles into partnership with him. The brothers continued the business at the same place, in the name of J. & C. Kleckner, and also opened another store at a place called Port Ann, in the same county. After conducting business at both places for some time, they became insolvent and were unable to pay their debts. They then confessed a judgment in favour of their father for

6 WR.—34

the sum of $5123.47, which was entered in the Common Pleas of Snyder county. They had previously sold out their store at Port Ann, to Huffnagle & Weaver, who paid them part in cash and part with their own notes, which were delivered to the father in part payment of the judgment which they had confessed to him. Huffnagle & Weaver, finding that they were unable to pay these notes, agreed to sell their stock of merchandise to Michael Kleckner, in consideration that he would cancel and surrender them. This stock of merchandise was delivered to Michael Kleckner, who agreed with Joseph Orwig, the father-in-law of Charles Kleckner, to open a store in Minersville, in Schuylkill county, to be conducted by Charles Kleckner, and for that purpose, on the 14th May 1860, gave him a power of attorney. The stock of goods thus obtained from Huffnagle & Weaver were then removed to Minersville, and an additional stock purchased by Kleckner & Orwig, in Philadelphia. The business was conducted for a short time by Charles Kleckner, as agent, in the borough of Minersville, when the store was removed to Ashland, and the business conducted by him there as agent of the plaintiffs; and the stock renewed from time to time, as occasion required. These are the goods which were taken in execution, as above stated. The defendants alleged that they are the property of J. & C. Kleckner, and do not belong to the plaintiffs; that the judgment confessed by the sons to the father, in Snyder county, was without consideration; that they were not indebted to their father; and that the judgment was confessed for the purpose of hindering and delaying the creditors of the sons.

On the trial of the case the following points were presented to the court below:—

The plaintiffs requested the court to charge,

1. That defendants cannot avail themselves in this issue of a defence on the allegation that the claim on which the judgment single bill in evidence was founded had become vested in Charles Cauley, by virtue of the deed of voluntary assignment of the 18th of October 1858.

2. That J. & C. Kleckner had a perfect right to give their father (Michael Kleckner) a judgment for a *bonâ fide* debt, notwithstanding it might have the effect of giving him a preference over other creditors.

3. That the mere fact of Mr. Cauley, the assignee of Michael Kleckner, leaving the claim on which the judgment single bill is founded, out of the inventory will not render it fraudulent and void, and if the testimony of Charles Cauley and Jeremiah Kleckner is believed, the leaving it out of the inventory is accounted for.

4. That if the jury believe, from the evidence in the cause, that the claim on which the judgment single bill in evidence was

[Keen *et al. v.* Kleckner.]

founded, was *bonâ fide*, and owing by J. & C. Kleckner to their father, and that the promissory notes of J. & C. Kleckner, against Weaver & Huffnagle, were given to M. Kleckner as part payment on that judgment, and that Michael Kleckner and Joseph Orwig purchased the store at Port Ann with these notes, and removed the goods to Minersville, and afterwards to Ashland, with other goods, and from time to time replenished the store, and it still belonged to them at the time of the levy of the sheriff, then they are entitled to a verdict.

5. That if any part of the goods in the store levied on by the sheriff at Ashland, belonged at the time to plaintiffs, they are entitled to a verdict for those goods, under the decision of the Supreme Court, in case of Van Winkle *v.* Young & Kline, 1 Wright 214.

6. That, even if part of the claim on which the judgment bill was founded had been barred by the Statute of Limitations, J. & C. Kleckner were not bound to interpose the statute, and there is nothing wrong, either in law or morals, in securing an honest claim, though barred by the Statute of Limitations.

7. That if the store belonged to plaintiffs, they had a right to appoint Charles Kleckner their agent to take charge of it for them, and by doing so did not render it liable to be taken in execution for the debts of J. & C. Kleckner.

8. That if J. & C. Kleckner did not manage their affairs as prudent men ought to do, it cannot affect the claim of their father, if it is *bonâ fide.*

9. That, even if the jury should believe that J. & C. Kleckner or Jeremiah Kleckner, in their cross-examination, have not given a satisfactory explanation of their losses and how they became insolvent, it cannot affect the claim of their father, if it was *bonâ fide* and honourably due him.

10. That Michael Kleckner had a perfect right of taking collateral securities on his claim (if *bonâ fide*) even to more than the amount of his debt, and is not bound to account for them faster than collected.

The defendants also requested the court to charge,

1. That if the alleged indebtedness of J. & C. Kleckner to Michael Kleckner truly existed, it was the duty of Charles Cawley, the assignee under the deed of voluntary assignment, to return that indebtedness in the inventory which he filed of the assets of Michael Kleckner.

That Cawley, the assignee, had no right to suppress such indebtedness under any pretext whatever, and that as he not only disregarded that duty, but combined and conspired with the assignor, Michael Kleckner, and the alleged debtors, Jeremiah and Charles Kleckner, as severally testified to by Cawley and Jeremiah and Charles Kleckner, to conceal the said alleged in-

debtedness, so that it should not become known and thereby interfere with the credit of Jeremiah and Charles, such disregard of duty and the combined concealment of the existence of such indebtedness was a fraud upon subsequent creditors, and Michael Kleckner, Charles Cawley, Jeremiah Kleckner, and Charles Kleckner are each and all estopped from asserting or maintaining the existence of such indebtedness to the prejudice of such creditors, and that therefore such indebtedness cannot be asserted as the consideration for the Huffnagle & Weaver notes, and the goods acquired by them may properly be treated by the creditors of J. & C. Kleckner as the property of the latter.

2. That, as Charles Cawley, the assignee of Michael Kleckner, filed of record an inventory of the assets of the latter, representing, under the oath of two sworn appraisers, that it was a full and complete inventory of all the property, which property passed by the assignment, and as this inventory omitted to report any such indebtedness from J. & C. Kleckner, as reported by the plaintiffs in this issue as the consideration of the judgment-note for $5143.47, and as said Cawley testifies that he well knew of the existence of such indebtedness, but wilfully and intentionally suppressed the existence of the same, so as to better enable J. & C. Kleckner to maintain credit and contract other indebtedness, said Cawley, the assignee, could not assert such indebtedness to the prejudice of subsequent creditors of J. & C. Kleckner, and that as the title to such indebtedness passed by the assignment to Cawley, the assignee, Michael Kleckner, could not assert such indebtedness as in him, and more especially is he debarred from so doing when he, as here shown, connived at the concealment by his assignee, Cawley.

3. That Michael Kleckner having, on the 25th May 1860, issued a writ of *alias fieri facias* upon his judgment against J. & C. Kleckner, for the full amount thereof not realized by the sale under the writ of *fieri facias*, and without having given any credit for any payment on account thereof by the Huffnagle & Weaver notes, which he claims in this issue were paid to him, on the 11th May 1860, on account of said judgment, and it appearing by the record of said judgment that he thereafter levied upon the real estate of J. & C. Kleckner, and had the same condemned under said writ of *alias fieri facias*, on the 25th September 1860, and it not appearing that even at the time of the sheriff's inquisition, any credit for payment by the Huffnagle & Weaver notes as aforesaid was given, such proceeding on the part of Michael Kleckner was an assertion of record that the whole amount of said judgments less the $          realized under the writ of *fieri facias*, was still due and unpaid, thereby contributing to the more ready condemnation of the real estate of defendants,

and thereby deterring subsequent judgment-creditors from seeking to realize their judgments out of the proceeds of said real estate, he is thereby estopped from asserting as against such creditors, that the Huffnagle & Weaver notes were received as a payment on account of such judgment; and that if the Huffnagle & Weaver notes cannot be treated as a payment on account of such judgment, and there being no pretence that they were received on any other account, they remained the property of J. & C. Kleckner, who cannot assert that goods purchased with such notes are not their property, liable to levy and sale by their execution-creditors.

4. That a voluntary confession of judgment by sons to their father, at a time when they are largely indebted and insolvent, and when pressing creditors are about to obtain judgments by adverse legal proceedings, makes it incumbent in a controversy between the father and creditors of the sons to establish the consideration and *bona fides* of such judgment by clear and satisfactory evidence; and that the absence of all memoranda in writing, and of the evidence of third parties, as in this case, to establish such indebtedness, are strong circumstances to raise the presumption of fraud and collusion, as to the judgments confessed, and more especially is that the case when the amount of such voluntary judgment is, as in this case, large, and where, as in this case, the consideration for the confessed judgment is admitted to be on an old stale claim, and based upon the assumption of liability of the sons for the alleged debt of others; and still more so is that the case where, in addition to the facts stated, the sons assign to the father collaterals, and make alleged voluntary payments, exceeding the whole amount of the judgment, and yet when the father, after such payments and receipt of the collaterals, issues execution, and levies upon and condemns real estate of the sons, without giving any credit for the payments, and takes assignments in writing, absolute on their face, of judgment against third parties, and the delivery of possession of personal chattels which are asserted to be merely collaterals for the voluntary judgment, and for which is neither given a receipt or memorandum in writing to show that such judgments assigned as aforesaid and such personal chattels are received as collaterals, and that when, as in this case, in addition to the facts stated, the sons knew that the alleged consideration for the judgment confessed did not belong to the father, but to his assignee under a deed in trust for creditors, and which assignee had not yet settled up the father's estate nor filed any account, such judgment and all payments to the father and assignment of collaterals are fraudulent and void against the creditors of the sons.

5. That whatever claim Michael Kleckner had against J. & C. Kleckner at the date of his assignment, passed to his assignee,

[Keen *et al. v.* Kleckner.]

Charles Cawley, in trust for his creditors to pay debts, whether owing by himself individually, or as one of the firm of M. Kleckner & Son, and that the right thereto will remain in such creditors until the trust is fully executed and the assignee discharged upon a final settlement of his account in the court of Union county, and that as both J. & C. Kleckner and Michael Kleckner knew, in May 1860, that such assignee had neither fulfilled his trust nor settled his account, no payment by J. & C. Kleckner to Michael Kleckner on account of such assigned claim, for the purpose of enabling Michael Kleckner to buy out the stock of store goods of Huffnagle & Weaver, so as to start a store in Minersville, with either Jeremiah or Charles Kleckner as his agent, would entitle J. & C. Kleckner to any credit for such payment of such assigned claim, and such alleged payment is therefore without consideration, and an appropriation of the assets of J. & C. Kleckner for the benefit of one or both of them is a fraud upon their creditors, and void as against such creditors.

6. That under the provisions of the 1st section of the Act of the 26th of April 1855, relative to frauds and perjuries, the alleged verbal assumption by Charles Kleckner of the half of the debts of M. Kleckner & Son, including the alleged consideration for the judgment of $5123.47, was void in law, and cannot therefore be set up after the insolvency of J. & C. Kleckner as the consideration of a judgment upon which to gain a preference over other creditors of the firm of J. & C. Kleckner out of the firm assets.

7. That if the jury believe that the judgment confessed by J. & C. Kleckner to their father, Michael Kleckner, was given for a full and valuable consideration, yet if it was confessed with the view of being used to cover up their real estate and book accounts, judgments against third parties, promissory notes for a large amount, and personal chattels, so as to take them out of the reach of other creditors, and so that the father might confer business advantages upon the sons, the whole transaction between the father and sons is fraudulent and void against creditors.

The court below (Hegins, P. J.) answered these points thus :—

The points of the plaintiffs were all affirmed. The 1st, 2d, 3d, 5th, and 6th points of the defendants were negatived, the 7th was affirmed, and the 4th answered as follows :—

" The plaintiffs are bound to satisfy the jury by the evidence that the judgment confessed by the sons to the father was for a *bonâ fide* debt, and not for the purpose of hindering, delaying, or defrauding creditors ; and whether it was or not the jury must decide from the evidence in the case."

Under these instructions there was a verdict and judgment for plaintiffs. The defendants thereupon sued out this writ, and

[Keen *et al. v.* Kleckner.]

assigned for error here the refusal of the court below to affirm their 1st, 2d, 3d, 5th, and 6th points, and in affirming plaintiffs' 5th and 6th points.

*F. P. Dewees, A. C. Simpson,* and *F. W. Hughes,* for plaintiffs in error.

*G. F. Miller,* for defendants in error.

The opinion of the court was delivered, June 26th 1862, by

READ, J.—The single question of fact in this cause was whether the goods levied upon, under the executions of the defendants below in the feigned issue, were the property of Jeremiah and Charles Kleckner, the defendants in those executions, or of the plaintiffs in the feigned issue, Michael Kleckner and Joseph Orwig. This question was distinctly submitted by the court to the jury, and has been found by them in favour of the plaintiffs; and the verdict must stand, unless the court committed some error in point of law in charging the jury affecting the merits of the case.

We perceive no error in the answers of the court to the 6th and 5th points put by the plaintiffs below, the first being clearly right, and the second being rendered inapplicable, as the jury found that all the goods were the property of the plaintiffs.

The answers of the court to the 1st, 2d, and 4th points of the defendants below, in refusing the instructions prayed for, seem to be entirely correct, for we cannot see how the assignment of Michael Kleckner, and the acts under it, have anything to do with the case, particularly as the debts secured by it were paid, and all the rights of the remaining property fully revested in the assignor. The defendants clearly could not complain of these acts, nor were they in a situation to complain of the proceedings by Michael Kleckner on his judgment, nor was there anything done by him, vesting the Huffnagle & Weaver notes in J. & C. Kleckner; the court were therefore right in negativing the 3d point of the defendants.

The 6th point was also properly negatived (Byles on Bills 109), and, if the jury believed the testimony, there was evidence of a consideration amply sufficient to sustain the judgment entered on the 10th May 1860 on the judgment-note of J. & C. Kleckner. Upon the whole, the court appear to have fairly submitted the facts to the jury, with proper instructions upon the law of the case, and therefore

The judgment is affirmed.